IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**WESLEY HARRIS, INDIVIDUALLY,
and as a MEMBER OF GOURMET
SEED INTERNATIONAL, L.L.C. and
BARBARA HARRIS, INDIVIDUALLY,
and as a MEMBER OF GOURMET
SEED INTERNATIONAL, L.L.C.,**

      Plaintiffs,

      v.                                                                                                  No. CIV-07-181 BB/KBM

**MICHAEL DEAN and DUSTY R.
DEAN,**

      Defendants.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on cross-motions for summary judgment submitted both by Defendants, Michael Dean and his wife, Dusty R. Dean (collectively, "the defendants") (Doc. # 55), and by Plaintiffs Wesley Harris, individually, and as a member of Gourmet Seed International, L.L.C. ("Gourmet Seed") and, his wife, Barbara Harris, individually, and also as a member of Gourmet Seed (collectively, "the plaintiffs") (Doc. # 50). In addition, the plaintiffs filed a motion to strike the defendants' response motion as untimely (Doc. # 59). For the reasons set forth below, the parties' cross-motions for summary judgment are DENIED. Moreover, the plaintiffs' motion to strike response is DENIED as moot.

**Factual Background**

The facts as presented by the parties are convoluted and subject to dispute at various stages. Nevertheless, the Court will attempt to delineate those relevant facts not in dispute, as well as describe those facts upon which the parties disagree.

Dusty R. Dean, Michael Dean's wife, started a plant and garden supply business called Harvest Moon Orchards ("Harvest Moon") in 1996. Michael Dean, who was otherwise employed, assisted his wife in managing Harvest Moon in his spare time. In 2003, Dusty Dean assumed full ownership and control of Harvest Moon. Then, in 2004, the Deans decided to divide Harvest Moon into two businesses. Harvest Moon would remain in Dusty's control, while Michael owned and operated a new company, Gourmet Seed, which focused on wholesale and bulk seed transactions.

Meanwhile, in November 2004, Wesley Harris formed a limited liability company, Good Earth Seed Company ("Good Earth"), with Michael Dean. Good Earth's primary business objective was to sell and distribute seeds for gardening. Shortly after forming Good Earth, Mr. Harris suggested that the partners dissolve Good Earth and conduct all their business through Dusty Dean's company, *Harvest Moon*. Michael Dean agreed and offered to give Mr. Harris a 50% stake in Gourmet Seed in exchange for an investment in Gourmet Seed of at least $150,000. Despite the apparent agreement, however, no formal paperwork was filed, and thus no new company was formed by Mr. Harris and Mr. Dean. Instead, Mr. Dean filed articles of organization to form Gourmet Seed by himself in New Mexico.

Soon thereafter, while Mr. Dean was visiting Mr. Harris in New Mexico, Mr. Harris proposed a more elaborate merger, combining Gourmet Seed and Dusty's Harvest Moon with Harris Wholesale Nursery—a company Mr. Harris had already owned. This proposed merger was to be consummated in several steps, the Deans and Harrises would each own a 50% stake in the newly-formed entity, and inventory and other property was to be moved to New Mexico from the Deans' businesses in Indiana.

According to the Deans, however, Mr. Harris never fulfilled the promises he made in the merger negotiations. Moreover, the Deans allege that Mr. Harris, when asked about performing the requisite steps and filing the necessary paperwork to consummate the merger, was dilatory. Faced with unforeseen delay in the merger process, the Deans decided to postpone their relocation to New Mexico.

Moreover, as the merger into Gourmet Seed was not yet realized, Dusty Dean continued operating Harvest Moon as a separate entity. At the same time, Michael Dean, allegedly in reliance on Mr. Harris's promise to pay a salary of $40,000 *per annum*, traveled to New Mexico for an extended stay to help establish Gourmet Seed. However, Mr. Dean claims that Mr. Harris never provided him the promised amount, citing slow sales and reducing his salary to approximately $14,000 *per annum*.

By early 2006, the Deans became disillusioned with Mr. Harris's business proposals, particularly after Mr. Harris allegedly hid financial information from the Deans. It was then that Mr. Harris demanded that Dusty Dean provide to Gourmet Seed the business assets of Harvest Moon. Mrs. Dean refused. With that, the Deans say Mr. Harris reneged on his promise to

provide them with housing in New Mexico, and the Deans notified Mr. Harris of their desire to move Harvest Moon's inventory back to Indiana.

Upon returning to Indiana, Mr. Dean alleges that he was locked out of all on-line accounts for Gourmet Seed, denying him access to the company's records.  He also alleges that Mr. Harris had accessed and altered the content on Harvest Moon's website without consent from Mrs. Dean—whom the Deans contend remained Harvest Moon's sole owner.  Mrs. Dean demanded that Mr. Harris return inventory and equipment he had acquired from Harvest Moon in anticipation of the merger.  Mrs. Dean also demanded that Mr. Harris cease using Harvest Moon's website.  Mr. Harris was allegedly uncooperative in response.

Ultimately, Mr. Dean sold his interest in Gourmet Seed to Mr. Harris.  The Deans contend that Mr. Harris's denial of access to Gourmet Seed's assets compelled Mr. Dean to sell his interest and cut business ties with Mr. Harris.  The Deans also contend that Mrs. Dean was never a signatory to the contract for a merger, meaning that Harvest Moon never merged into Gourmet Seed.  Nevertheless, the Deans assert, Mr. Harris has used Harvest Moon's intellectual property, including its catalog, customer lists, and website, without lawful authority to do so.

For their part, the Harrises claim that Harvest Moon had merged into Gourmet Seed, and that when Mr. Harris bought Mr. Dean's interest in Gourmet Seed, he acquired all of the assets of Harvest Moon.  The Harrises further assert that the Deans started an Internet seed business, in violation of the non-compete clause in the contract between Mr. Harris and Mr. Dean for sale of Mr. Dean's stake in Gourmet Seed.

The Harrises initiated this lawsuit, seeking specific performance—asking this Court to enjoin the Deans from using the Harvest Moon assets, name, and other property.  In response, the

Deans counter-claimed, seeking damages for copyright infringement based on Mr. Harris's use of a mail order catalog almost identical to that produced by Harvest Moon prior to the alleged merger. In addition, the Deans counter-claim that the Harrises violated the Lanham Act, which prevents trademark infringement, false advertising, and cyberpiracy.

## **Standard of Review**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addressing the parties' motions, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The party moving for summary judgment bears the burden of showing that no genuine dispute over material fact(s) exists. *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (the moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.") If the movant meets its burden, the non-movant must identify evidence that would enable a trier of fact to find in the non-movant's favor. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

## **Discussion**

<u>The Harrises' Claims</u>

The plaintiffs' claims that the defendants breached the contract in which Mr. Dean sold his stake in Gourmet Seed turn on several unresolved factual issues, making summary judgment inappropriate. For example, the plaintiffs claim that Mr. Dean held himself out to be the sole owner of Harvest Moon, with ability to enter into contracts on behalf of Harvest Moon—meaning that Harvest Moon became part of Gourmet Seed when the companies allegedly merged. Were this claim true, Mr. Harris would be the owner of Harvest Moon after purchasing Mr. Dean's stake in Gourmet Seed, and the plaintiffs may indeed avail themselves of the non-compete clause's protections. *See Bowen v. Carlsbad Ins. & Real Estate, Inc.*, 724 P.2d 223, 225 (N.M. 1986) (finding non-compete clauses enforceable against sellers so long as they serve as legitimate protection of the buyer's interests, rather than an unreasonable restraint on the seller).

Without proof that Mr. Harris acquired Harvest Moon in a merger, however, the Court cannot grant summary judgment based solely on the plaintiffs' bald assertion that Harvest Moon merged into Gourmet Seed. The evidence the plaintiffs have submitted, including affidavits, e-mails, and other written assertions fail to resolve the ultimate question: whether the contract for sale to Mr. Harris of Mr. Dean's stake in Gourmet Seed included Harvest Moon. To take one example among several, Mr. Harris submits an affidavit claiming that Michael Dean publicly represented that Harvest Moon had become part of Gourmet Seed. But the Deans dispute this by stating that Mrs. Dean operated Harvest Moon herself and did not intend to merge it into Gourmet Seed. Such conflicting evidence makes summary judgment inappropriate. *Strickland v.*

*Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1202 (11th Cir. 2001) (summary judgment is not appropriate on swearing match).

Similarly, the crux of the dispute over whether the Deans failed to turn over Gourmet Seed's assets, pursuant to the contract, depends on whether a merger was ever consummated. To be sure, if Harvest Moon became part of Gourmet Seed in a merger, Mr. Harris would—having purchased the Deans' share of such entity—have a right to use its catalog, customer lists and other property. On the other hand, if a lawful merger never occurred, Harvest Moon would remain solely owned by Dusty Dean, and its assets would be for her exclusive use.

The logical approach to determining these claims, therefore, would be to analyze the merger agreement itself. However, the parties have not attached the contract for merger. Regardless of the reason for its absence, the Court cannot decide which party is entitled to the relief sought without knowing the specifics of the agreement between the Harrises and the Deans on merging the various companies into Gourmet Seed. For this reason, summary judgment is inappropriate, and the plaintiffs' motion is DENIED. *See Foodtown v. Sigma Mktg. Sys.*, 518 F. Supp. 485, 492 (D.N.J. 1980) (record must be adequate to support summary judgment).

<u>The Deans' Counter-claims</u>

Similarly, the Deans' counterclaims on trademark infringement, false advertising, and cyberpiracy, depend on whether a merger occurred in which Harvest Moon became a part of Gourmet Seed. If such merger occurred, Mr. Harris would have a right to use Harvest Moon's domain name, catalog, and customer lists. If not, however, the Deans' counter-claims would likely prevail. The bottom line is that the Court cannot make a determination because the parties have not provided the precise merger agreement terms, nor proof on whether both parties

satisfied such terms.  Accordingly, the defendants' motion for summary judgment is also DENIED.

## Conclusion

Summary judgment is inappropriate in this case for the simple reason that several disputed facts remain which would have dispositive legal significance.  Until such facts are established by a preponderance of the evidence at trial, the Court is unable to grant judgment for either party.  For the foregoing reasons, the parties' cross-motions for summary judgment are DENIED.  Also, the plaintiffs' motion to strike response is DENIED as moot.

*BRUCE D. BLACK*
BRUCE D. BLACK
United States District Judge