IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WESLEY HARRIS and BARBARA HARRIS,
Individually and as Members of Gourmet Seed
International, LLC,

       Plaintiffs/Counter Defendants,

v.                                                                     CIV 07-0181 BB/KBM

MICHAEL DEAN and DUSTY R. DEAN,

       Defendants/Counter-Claimants.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

In his memorandum opinion and order denying cross-motions for summary judgment in this matter, The Honorable Bruce Black noted that "[t]he facts as presented by the parties are convoluted and subject to dispute at various stages." *Doc. 65* at 2. Although the facts are hotly disputed, it is apparent that Plaintiffs and Defendants were involved the attempted sale to Plaintiffs or a merger with one of Plaintiffs' companies of an entity in the business of selling plant seeds. When discord arose, a buyout and non-competition agreement was reached between Defendant Michael Dean and Wesley and Barbara Harris in 2006. *See,*

*e.g., Doc. 11* at 9-17.  Defendant Dusty Dean was not involved in the either the transfer of the business or the 2006 agreement.  In 2007, Plaintiffs brought the present action for alleged breaches of that agreement by the Deans.

As I describe later, I was informed that the parties had reached a negotiated resolution to end this litigation.  I held a very brief telephonic hearing to assure myself that the parties were fully informed of the terms of their agreement and that the parties had entered into the agreement voluntarily.  Now presiding Judge Black has referred to me Plaintiffs' Motion to Enforce Settlement *(Doc. 75)* for proposed findings and a recommended disposition.  *Doc. 77.*

The Applicable Law

This Court "'has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.'"  *Balander v. Hermes Consol. Inc.,* 295 Fed. App'x 902, 905 (10th Cir. 2008) (quoting *United States v. Hardage,* 982 F.2d 1491, 1496 (10th Cir. 1993)).  "'Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law.'"  *Evans-Carmichael v. United States,* 250 Fed. App'x 256, 262 (10th Cir. 2007) (quoting *Shoels v. Klebold,* 375 F.3d 1054, 1060 (10th Cir. 2004)).

> Under New Mexico law, "[f]or an offer and acceptance to create a binding contract, there must be an objective manifestation of mutual assent by the parties to the material terms of the contract." *Pope v. Gap, Inc.,* 125 N.M. 376, 961 P.2d 1283, 1286-87 (1998).  Further, "[a]n oral stipulation for the compromise and settlement of claims . . . made in open court in the presence of the parties and preserved in the record of the court is as binding as a written agreement." *Esquibel v. Brown Constr. Co.,* 85 N.M. 487, 513 P.2d 1269, 1272 (1973) (quotation omitted).

*Id.*  It is against this background that I proceed with the analysis.

## The Negotiations

The Defendants live out-of-state and have faced significant personal and family-related tribulation since this litigation began, and the parties therefore engaged in early settlement negotiations.  Almost one and a half years ago, I agreed to vacate a scheduled mediation based on the representations that the parties thought they could resolve their differences without court intervention.  *See Doc. 42.*  About two weeks after I vacated the conference, Defendants' counsel withdrew, and the Defendants proceeded *pro se.*

After Judge Black's denial of cross-motions for summary judgment, the parties notified me that they were engaged in long distance settlement discussions

on their own.  After months of no further word, I decided to set a telephonic status conference for April 8, 2009.  At that time I was informed that the parties had just a few points of disagreement.  I directed the parties to engage in further telephonic settlement negotiations and set it for the morning of April 28, 2009.  I agreed to make myself available by phone.

At 8:30 a.m. on the day of those negotiations, the parties called my chambers and informed me that they had resolved all differences.  I proceeded to audiotape the terms of the settlement and make sure that it was a knowing and voluntary agreement for all parties.[1]  Plaintiff Wes Harris appeared with his attorneys Michael Newell, Lewis Cox, and Roger Michener.  Michael Dean and Barbara Dean appeared *pro se.*

I requested Mr. Newell to take the lead, and he explained that the essence of the settlement was that the Deans agreed to transfer "Harvest Moon Farms & Seeds" to the Harris' and their business Gourmet Seed International, LLC and to not compete with them.  He outlined the terms of the agreement by referring to the following communications:  (1) the written "offer" contained in the letter dated

---

[1] Following that telephonic hearing, I entered an order to submit closing documents once the terms had been memorialized and the executed by the parties.  Instead, the motion to enforce was filed.

4

December 15, 2008 letter from Defendant Michael Dean to Attorney Cox (the "Dean offer letter"); (2) the written "response" letter dated January 12, 2009 from Attorney Cox to Michael Dean (referred to as the "Cox acceptance letter"); and (3) the "oral modifications" of the Cox response discussed right before the hearing. Both of the documents are attached to Plaintiffs' reply. *See Doc. 79,* Exh. C.

During the telephonic hearing, Mr. Newell indicated that the Cox acceptance letter recast a summary of the terms contained in the Dean offer letter to which Plaintiffs agreed and further set forth "five issues which the Harrises believe are necessary to fully resolve this matter." *Doc. 79* at Exh. C. As to those additional terms, Mr. Newell stated that "there were some things that we discussed today and modified from the January 12, 2009 letter."

As to the five issues in the Cox letter, Plaintiffs had "backed off" as to the first two.[2] He said that the parties had agreed to incorporate the last three terms of the Cox acceptance letter (¶¶ 3-5) which he described in summary fashion:

---

[2] Neither of those oral modifications are at issue. The Cox letter paragraph 1 mentions that "all copyrights and intellectual property," including two specifically-cited websites, would be transferred. At the hearing, however, Attorney Newell noted that the Deans did not actually hold any rights to these websites so, other than a copyright in a catalogue, no websites or "intellectual property rights or things of that nature" were being transferred with the settlement. Paragraph 2 of the Cox letter request the Deans to give a detailed accounting of assets no longer in their possession, but at the hearing, Attorney Newell noted that demand had been waived. *Tape of the hearing.*

> And then, everything else is the same in the letters: the non-compete agreement, mutual release of the claims, and each party being liable for the consequences of their own actions. Basically, if the Deans did it, they'll be responsible for any liability, tax ramifications, whatever. If Mr. Harris – the Harris' did it – they'll be responsible for liable for their actions, tax ramifications, whatever.

*Tape of the hearing.* When I asked at the hearing: "Has Mr. Newell accurately stated the terms of the agreement," both Deans answered "yes." *Id.*

## The Contested Provisions

The Deans challenge certain portions of the settlement documents they have been asked to execute. *Doc. 76.* They contend that two – the non-compete clause and the provision regarding assumption of liabilities – are overly broad and encompass obligations to which they did not agree. They also take issue with the standard provision allowing attorney fees and costs for breach of the agreement.

### *The Non-Competition Agreement*

The Deans' December 15, 2008 offer letter mentions non-competition in a vague way but clearly refers to the 2006 agreement, stating:

> With this offer my wife is willing to also provide you a non-compete agreement to the nature of this type of business for the future. I am also willing to extend that arrangement as well if it would satisfy your client's needs though I still contend I have not engaged broken that arrangement in the past.

*Doc. 79*, Exh. B.  Paragraph 3 of the Cox acceptance letter specifically requires that both of the Deans "agree that they shall execute *non-compete agreements that are consistent with the parties original agreement in 2006.*"  *Id.,* Exh. C (emphasis added).  Thus, there is no doubt that this became an essential term of the settlement to which all parties agreed.[3]

I am compelled to concur, however, with the Deans that the language of the proposed non-compete clause expands their obligations beyond those agreed by the parties. *See Doc. 76* at 2.  The non-competition section of the 2006 contract is in the record and provides as follows:

> For one year following the closing, the Seller, Michael Dean will not directly or indirectly participate *in a business involving the sale of seed(s)* of any type that is similar or the same to a business now or later operated by Buyer [previously defined as Wesley Harris and Barbara Harris].  This includes participation of his own business or acting as co-owner, director, officer, consultant, independent contractor, or employee of another business.

*Doc. 11-2* at 4 (emphasis added).[4]  However, the non-competition term that

---

[3] Indeed, Paragraph 2 of the Harris's submitted settlement agreement similarly provides that both Deans "shall execute non-compete agreements consistent with the terms set forth in the August, 2006 Contract, in a form attached hereto."  *Doc. 75-2* at 3.

[4] The 2006 non-compete agreement specifically provided that Mr. Dean would not

    (a)    solicit or attempt to solicit any business or trade from Buyer's actual or prospective customers or

Plaintiffs seek to enforce does not limit the prohibition to a business "involving the sale of seeds." Instead, Paragraph 2(a)(1) prohibits competition "in <u>any</u> business of a type or character competitive with the Business (hereinafter defined) as conducted by GSI and the Harrises." As defined later, "Business" means "the sale of seeds *and other horticultural products* as now conducted by GSI and Harrises, whether by face to face, through mail order sales or via the Internet, and the providing of goods, materials and services in connection therewith." *Doc. 75-2, Non-Competition Agreement at ¶ 2(b).* This expansion to other horticultural or agricultural businesses not strictly involving the sale of seeds was not contemplated in the August 2006 agreement, and the term is therefore unenforceable as written.

*Assumption of Liabilities*

The Deans also complain that their offer letter did not mention anything about assuming liabilities. However, the Cox acceptance letter specifically required

---

        clients
- (b) solicit or attempt to solicit the distribution of seed(s) from the Bavicchi Seed Company of Italy.
- (c) employ or attempt to employ any employee of Buyer
- (d) divert or attempt to divert business away from Buyer, or
- (e) encourage any independent contractor or consultant to end a relationship with Buyer.

Each partner of Seller acknowledges and agrees that if any partner of Seller breaches any of the terms of this paragraph . . . Buyer will sustain irreparable harm and be entitled to obtain an injunction to stip any breach of this paragraph . . . .

that "[e]ach party will be liable for the consequences of his or her own actions prior to the date the settlement and release of claims is executed." *See Doc. 79,* Exh. C. At the hearing, Mr. Newell represented that during their oral discussions of April 28, 2009, the Deans had agreed to this term. And, in turn, both of the Deans indicated to me that Mr. Newell had accurately stated the terms of the agreement.[5]

The Deans' now contend that in their April 28, 2009 negotiations, they thought their assumption of liabilities to be more limited. Specifically,

> [a] liability assertion to actions was made for each parties' actions regarding specifically any conduct or action having business with 'Harvest Moon Farms and Seed Company' after the sale of Gourmet Seed International was finalized by contract in August of 2006 to the date currently of the Settlement Agreement.

The Deans deny that they agreed to assume liabilities for actions they took while in the employ and owners of Gourmet Seed International. *See Doc. 76* at 2. But neither the Cox acceptance letter nor the recitation of the terms of the agreement and affirmation by the Deans reflect such an intent to limit liability. I therefore find this argument, as well as the argument against of the standard clause for

---

[5] And, unlike the language used in the non-competition portion, the settlement documents do not expand upon what the parties agreed to. It states that "[e]ach party hereto will be liable for the consequences of his or her own actions which occured prior to the date of this agreement and the accompanying Mutual General Release of all Claims is executed. *Doc. 75-2* at 3, ¶ 4.

imposition of attorney fees and costs for breach of the agreement, without merit.

Summary

The non-compete offer and acceptance clearly incorporated by reference the obligations as set forth in the 2006 contract. That document specifically limited non-competition to competing "seed" businesses, and nothing at the hearing suggested that the parties had actually agreed on something broader. Thus, the agreement can be enforced only to the extent that the non-competition obligations are limited as agreed upon by all the parties. In all other respects, the Court should enforce the settlement agreement as written.

Wherefore,

IT IS HEREBY RECOMMENDED that Plaintiffs' motion to enforce the settlement *(Doc. 75)* be granted in part as described above.

> THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the-ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

                                                 *Karen B Molzen*
                                  UNITED STATES MAGISTRATE JUDGE